UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RACHEL MAHER, *et al.*, individually and on behalf of other similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AMAG PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 20-152 (JXN)(JBC)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiffs'[1] unopposed motions for final settlement approval (ECF No. 139), final settlement class approval (*id.*), and attorneys' fees, expenses, and service awards (ECF No. 137). The Court carefully considered the parties' submissions and held an in-person final approval hearing on January 12, 2026 (*see* ECF No. 142). For the reasons set forth below, the motions are **GRANTED**.

**I.     BACKGROUND**

Defendant AMAG Pharmaceuticals ("AMAG") marketed and sold a drug designed to prevent preterm births ("Drug"). (*See* Final Approval Joint Decl. ¶ 14, ECF No. 139-3.) The Food and Drug Administration ("FDA") approved the Drug in 2011. (*Id.*) After a 2019 study showed the Drug did not work, the FDA withdrew approval in 2023. (*Id.*)

---

[1] The named Plaintiffs are Rachel Maher, Marina Gomez, Rebecca Torres, Brittany Bonds, Teresa Faughnan, Ebony Odommorris, Molly O'Hara, and Brandy Silas.

Plaintiffs in five states sued AMAG, alleging AMAG knew the Drug was ineffective despite marketing it as effective.[2] (*Id.* ¶ 15.) One of those lawsuits was filed in this Court. (*Id.*) The other four were transferred here and consolidated. (*Id.*) After this Court partially granted AMAG's motion to dismiss in 2023, (*see* Dismissal Op., ECF No. 109), the parties entered mediation, (Final Approval Joint Decl. ¶¶ 25–26). Mediation succeeded, and the parties signed a Settlement Agreement on May 1, 2025. (*Id.* ¶ 29; *see also* Final Approval Mot. Ex. 1 ("Settlement Agreement"), ECF No. 139-3 at *21–46.)

The Settlement establishes a $7.5 million fund, representing 48% of the potential damages Settlement Class Members could recover, to be distributed pro rata to claimants. (Final Approval Joint Decl. ¶ 34.) The Settlement Class has 65,000 members. (*See id.* ¶ 30.) The Court preliminarily approved the Settlement and preliminarily certified the Settlement Class on July 10, 2025. (Preliminary Settlement Approval Op., ECF No. 134.) Thereafter, the parties notified the Settlement Class. (Final Approval Joint Decl. ¶¶ 47–52.) Thirty class members requested exclusion, and none objected. (*Id.* ¶¶ 58–60.)

The parties now request final approval and class certification. (*See* Final Approval Moving Br., ECF No. 139-1.) They also request $2,500,000 in attorneys' fees (representing 33% of the Settlement Fund), $101,625.09 in litigation expenses, and a $5,000 service fee for each named plaintiff. (Fees Award Moving Br., ECF No. 137.) The Court held an in-person final approval hearing on January 12, 2026.

---

[2] AMAG denies these allegations.

2

## II. DISCUSSION

### A. Final Settlement Approval

#### *i.* *Notice*

Before granting final settlement approval, "[t]he [C]ourt must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must clearly and plainly state (1) "the nature of the action"; (2) "the definition of the class certified"; (3) "the class claims, issues, or defenses"; (4) "that a class member may enter an appearance through an attorney if the member so desires"; (5) "that the court will exclude from the class any member who requests exclusion"; (6) "the time and manner for requesting exclusion"; and (7) "the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). Notice must also "satisfy the requirements of due process." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Here, a third-party administrator sent mail and email notice to the class members. (*See* Lynch Decl. ¶¶ 6–11, ECF No. 139-2.) The notice clearly and plainly states the information Rule 23(c)(2) requires, such that a class member could make an informed decision about the settlement. (*See* Notice of Settlement, ECF No. 139-2 at *11–12.) The Court, therefore, is satisfied the class received adequate notice.

#### *ii.* *Fairness*

Under Federal Rule of Civil Procedure[3] 23(e)(2), the Court may grant final approval of a settlement only after a hearing and finding the settlement is "fair, reasonable, and adequate." Settlement is fair, reasonable, and adequate based on:

---

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534–35 (3d Cir. 2004) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). Other relevant factors include:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). The Court must also consider whether the settlement provides a "direct benefit to the class." *Baby Prods.*, 708 F.3d at 178. In this case, all the above factors support final approval.

        **a.**      **Complexity**

This factor assesses the time and money the parties would spend if litigation continued. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *Id.* This settlement follows a sprawling, six-year-long, multi-state, pharmaceutical class action lawsuit with 65,000 class members. To maintain the action, the parties would have to conduct voluminous discovery and litigate motions for class certification, summary judgment, and to exclude evidence at trial. The parties would have contested the action at every

step. In short, after six years, this case just proceeded past the motion-to-dismiss stage. Bringing it to trial would take many more. This factor, accordingly, favors settlement.

### b. Class Reaction

This factor gauges whether class members support settlement. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 438 (3d Cir. 2016) (citing *In re Warfarin*, 391 F.3d 516, 536 (3d Cir. 2004)). The class in this case has 65,000 members; none objected. (Final Approval Joint Decl. ¶ 60.) "These facts indicate a strong positive reaction by Settlement Class members to the Agreement and heavily weighs in favor of approving settlement." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018).

### c. Stage of the Proceedings

This factor concerns how far the case developed so the Court can determine whether class counsel adequately appreciated the merits of the case before settling. *In re Gen. Motors*, 55 F.3d at 813. Over the six-year life of this case, the parties briefed two motions to dismiss, exchanged over 130,000 pages of discoverable documents, and spent years negotiating a settlement. (Final Approval Joint Decl. ¶¶ 13, 20, 27.) The Court is satisfied that the parties had enough information to appreciate the value of Plaintiffs' claims. This factor, therefore, favors settlement.

### d. Risk of Establishing Liability and Damages

This factor balances the likelihood of success at trial against the benefits of an immediate settlement. *See In re Nat'l Football League*, 821 F.3d at 439. While this case partially survived a motion to dismiss, the case would have to withstand reconsideration, summary judgment, *Daubert* motions, and class certification. And, the case raised questions of first impression regarding FDA pre-emption. Settlement provides certain relief now. This factor, accordingly, supports settlement

approval. *See id.* (finding settlement outweighed risk of establishing liability where class members faced "stiff challenges surmounting the issues of preemption.").

### e. Risk of Maintaining the Class

"[T]he prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *In re Gen. Motors*, 55 F.3d at 817. Class certification is tenuous because the Court "retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Warfarin*, 391 F.3d at 537. The parties acknowledge class certification in this case is uncertain, particularly given the complex multi-state nature of the litigation, and AMAG would likely challenge certification if the action proceeded. This factor, therefore, supports settlement approval.

### f. Ability to Pay a Larger Judgment

Because the record does not indicate whether AMAG could pay a larger judgment, this factor is "irrelevant to determining the fairness of the settlement." *Id.* at 538.

### g. Reasonableness of Settlement vs. Possible Recovery and Risks

These factors examine whether "settlement represents a good value for a weak case or a poor value for a strong case." *Id.* "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* To assess the reasonableness of the settlement, the Court compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322 (quoting *In re Gen. Motors*, 55 F.3d at 806).

Here, the $7.5 million settlement represents 48% of what Plaintiffs would potentially recover had they taken the case to trial. This is well within "the 30%–70% damages recovered in

similar pharmaceutical industry class actions." *In re Warfarin*, 391 F.3d at 538; *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (approving settlement with "36–37% recovery rate."). On the other side of the coin, the Court "must take seriously the litigation risks inherent in pressing forward with the case." *In re Nat'l Football League*, 821 F.3d at 440. The unsettled issues of FDA preemption, combined with Defendants' robust motion practice, could have left Plaintiffs with no recovery at all. Accordingly, this "settlement represents a fair deal for the class when compared with a risk-adjusted estimate of the value of plaintiffs' claims." *Id.*

### h.  Maturity of Issues

The maturity of the issues is "measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages." *In re Prudential*, 148 F.3d at 323. As discussed above, the parties exchanged sufficient discovery to understand the merits of the case. Therefore, this factor weighs in favor of settlement approval.

### i.  Existence and Probable Outcome of Claims by Other Classes

This factor does not apply because the class includes everyone who spent money on the drug; no other classes exist.

### j.  Comparison of Class Results

This factor does not apply because there are no other classes.

### k.  Opt-Out Rights

This factor weighs in favor of settlement because the notice of settlement gave class members the right to opt out. (*See* Notice of Settlement.)

    **l.  Reasonable Attorneys' Fees**

This factor also weighs in favor of settlement because, as discussed below, the requested fees are reasonable.

    **m.  Reasonable Claims Procedures**

This factor supports settlement approval because an experienced claims administrator provided Settlement Class Members with adequate notice and multiple ways to file claims. (*See generally* Lynch Decl.)

    **n.  Direct Benefit**

Here, the settlement "adequately prioritizes direct benefit to the class" because each class member is entitled to direct monetary relief, and none of the money reverts to AMAG. *In re Baby Prods.*, 708 F.3d at 178.

Because notice was proper and the settlement is fair, adequate, and reasonable under the relevant factors, the Court **grants** Plaintiffs' motion for final settlement approval.

  **B.  Final Class Certification**

Rule 23 "allows the Court to certify a class for settlement purposes only." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 228 (D.N.J. 2005). A settlement class must comply with Rule 23(a) and (b).

    ***i.  Rule 23(a) Factors***

Under Rule 23(a), a class may be certified only if (1) the class is so numerous that joinder of all members is impracticable. (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

8

### a. Numerosity

"[N]umerosity is generally satisfied if there are more than [forty] class members." *In re Nat'l Football League*, 821 F.3d at 426. This class has 65,000 members. The Court is satisfied the class is too numerous to practically join all members.

### b. Commonality

Commonality means all members of the class share "at least one question of fact or law." *Warfarin*, 391 F.3d at 528. Here, every member of the class spent money on the Drug. They all share the same question: whether AMAG knew the Drug did not work when they sold it.

### c. Typicality

Typicality means the named Plaintiffs' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). Here, the named Plaintiffs' claims are typical. They all arise out of the same conduct (spending money on the Drug), involve the same injury (spending money on a falsely advertised Drug), and seek the same relief (getting the money they spent back).

### d. Adequacy

Adequacy has two components: (1) class counsel must be qualified to represent the class, and (2) there are no conflicts of interest between the named plaintiffs and the class. *Warfarin*, 391 F.3d at 532. Here, the Court is satisfied class counsel is well-qualified and more than experienced enough to represent the class. Moreover, the named Plaintiffs and the class share the same interest—to recover money they spent on the Drug.

#### ii. *Rule 23(b) Factors*

Rule 23(b) permits class certification if the Court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

Common questions of fact or law predominate when "the defendant's conduct was common as to all of the class members, and . . . all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). Here, AMAG marketed and sold the Drug, every class member spent money on the Drug, and AMAG's alleged misrepresentations about the Drug harmed every class member. So, there is predominance.

### b. Superiority

The Court is convinced a class settlement is plainly superior to adjudicating 65,000 individual lawsuits, many of which the individual class members could not afford to maintain. Accordingly, the superiority factor is met.

Because the Settlement Class satisfies Rule 23's class certification requirements, the Court **grants** Plaintiffs' unopposed motion for final settlement class certification.

### C. Fees, Expenses, Service Awards

#### i. Fees

Plaintiffs' counsel seeks $2.5 million in fees—a third of the $7.5 million Settlement Fund. The Court has the discretion to award attorneys' fees. *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 153 (D.N.J. 2013). But the Court must "clearly articulate the reasons" for an award. *Id.* "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." *Varacallo*, 226 F.R.D. at 248.

Courts analyze fees using either the lodestar or percentage-of-recovery methods. *In re Gen. Motors*, 55 F.3d at 821. The lodestar method is for cases with fee-shifting statutes. *Id.* The

percentage-of-recovery method is for cases with a common settlement fund. *Id.* This case has a common settlement fund and no fee-shifting statute.

In awarding fees as a percentage of recovery, the Court should consider:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir.2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The Court should also weigh:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.

*In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006) (internal citations omitted).

### a.     Size of the Fund; Number of Beneficiaries

This Settlement has a $7.5 million cash fund. Each of the 65,000 class members is eligible for direct monetary relief. These amounts weigh in favor of the fee award. *See In re Ins. Brokerage*, 297 F.R.D. at 154 (finding this factor supported award where settlement was "significant . . . despite the substantial risks of establishing liability" and each beneficiary would receive payment).

### b.     Objections

There are none. This is "strong evidence that the fees request is reasonable." *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 435 (D.N.J. 2004).

### c.     Skill and Efficiency of Attorneys

Class counsel skillfully litigated this complex, years-long pharmaceutical class-action lawsuit involving at least one issue of first impression. One of the largest law firms in the country,

Hogan Lovells, represented AMAG. The parties adeptly negotiated the settlement. "[T]he result itself evidences counsel's skill and efficiency." *Id.* at 437. This factor supports the fee award.

### d. Complexity and Duration of Litigation

As discussed above, this is a complex pharmaceutical class-action lawsuit spanning six years and raising several issues of first impression. This factor supports the fee award.

### e. Risk of Non-Payment

Class counsel litigated this case on a contingent basis. (*See* Fee Award Joint Decl. ¶ 42, ECF No. 137-1.) If they lost, they would not get paid. And there was a real risk they would lose. So, this factor supports the fee award.

### f. Time Devoted to Case

Class counsel devoted 3,600 hours to this case over the course of six years. (*Id.* ¶ 36.)

### g. Awards in Similar Cases

Class counsel asks for a 33% fee. Courts frequently award a 33% fee in complex common fund cases. *See In re Ins. Brokerage*, 297 F.R.D. at 155 (noting 33% "has regularly been found acceptable in common fund settlements in this District."); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. 08-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (collecting cases).

### h. Value of Benefits Attributable to Class Counsel

This factor considers whether class counsel advanced the litigation or merely piggybacked off prior governmental investigations or proceedings. *In re Prudential*, 148 F.3d at 337. Here, class counsel conducted its own investigation before government agencies did, and filed the action well before the FDA withdrew its approval for the Drug. (Fee Award Joint Decl. ¶ 18.) This factor, accordingly, supports the fee award.

### i. Hypothetical Contingent Fee

Class counsel has a 40% contingent fee with the named Plaintiffs. (*Id.* ¶ 42.) They are seeking less than that for the Settlement Class. So, this factor supports the fee award.

### j. Innovative Terms

This appears to be a standard settlement with no novel or unique terms. This factor is, therefore, neutral.

### k. Lodestar Crosscheck

"A court may check its percentage recovery determination against a lodestar method calculation to assure that the percentage awarded is not an unreasonable hourly fee." *Lucent Techs.*, 327 F. Supp. 2d at 442–43. The lodestar method multiplies the number of hours counsel reasonably worked on the case by a reasonable hourly billing rate based on the geographic market, the nature of the representation, and counsel's experience. *Id.* at 443 (citation omitted). Class counsel spent 3,598 hours on this matter, for a total lodestar of $2,078,893, yielding a 1.2 multiplier.[4] (Fee Award Joint Decl. ¶¶ 36–39.) This is "well within the range of attorneys' fees awarded and approved by" the Third Circuit. *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 818 (3d Cir. 2010).

### ii. Expenses

Class counsel may recover adequately documented reasonable expenses incurred while prosecuting a class action. *In re Ins. Brokerage*, 282 F.R.D. at 125. Class counsel seeks to recover $101,625.09. Class counsel documented the expenses (*see* ECF No. 137-1 at *132–37), which they certify are reasonable and necessary for litigating this matter (Fee Award Joint Decl. ¶¶ 43–44).[5]

---

[4] As class counsel noted at the final approval hearing, the time they spent preparing for the instant motions likely reduces the lodestar multiplier even further, strengthening the Court's finding that this fee is reasonable on a lodestar crosscheck.

[5] The Court briefly notes Paul LLP incurred $28,126.30 for "other" expenses. (*See* ECF No. 137-1 at *135.) At the final approval hearing, Paul LLP explained this amount was an "eclectic mix" of costs related to obtaining medical

### *iii.* Service Awards

Service awards "compensate the named Plaintiff[s] for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Varacallo*, 226 F.R.D. at 257 (citation omitted). While a $5,000 incentive award for each of the eight named Plaintiffs is within the range approved by courts, "incentive awards will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." *Id.* at 258 (collecting cases). Here, class counsel certifies the named Plaintiffs "participated in discovery, searched for and produced their relevant documents, and made themselves available to participate in meetings or hearings. Additionally, the Named Plaintiffs were willing to expose their personal and private healthcare information to obtain benefits for the Class." (Fee Award Joint Decl. ¶ 45.) The Court finds this is a substantial basis to give a $5,000 award to each of the named Plaintiffs.

In sum, the Court **grants** Plaintiffs' unopposed motion for attorneys' fees, expenses, and service awards.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' unopposed motions for final settlement approval, settlement class certification, and attorneys' fees, costs, and service awards (ECF Nos. 137, 139) are **GRANTED**.

**DATED:** 1/27/2026

HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

records, Freedom of Information Act requests, bank wire fees, and informal discovery. Paul LLP's explanation satisfies the Court.